IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BUFFALO GAMES, LLC,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )   C.A. No. 26-055 (JLH)
                                       )
MERCHSOURCE, LLC,                      )   **DEMAND FOR JURY TRIAL**
                                       )
            Defendant.                 )
                                       )

## ANSWER

For its Answer to the Complaint filed by Buffalo Games, LLC ("Plaintiff" or "Buffalo Games"), Defendant MerchSource, LLC ("Defendant" or "MerchSource"), through its counsel, hereby denies each and every allegation (reproduced from the Complaint below) except as expressly admitted or qualified as follows:

## THE PARTIES

1.     Plaintiff Buffalo Games is a New York limited liability company with a place of business at 220 James E. Casey Drive, Buffalo, New York 14206.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

2.     Defendant MerchSource is a Delaware limited liability company with a principal place of business at 7755 Irvine Center Drive, Suite 100, Irvine, CA 92618.

**ANSWER**: Admitted.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, *e.g.*, 35 U.S.C. §§ 271, 281, 283-285. Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**: This paragraph states legal conclusions to which no answer is required; if such an answer is required, denied.

4.      Defendant MerchSource conducts significant business in the State of Delaware, and in this judicial district, and it is incorporated in this State. Additionally, MerchSource's service of process address is listed on the Delaware Department of State: Division of Corporations website as 251 Little Falls Drive, Wilmington, DE 19808. Accordingly, this Court has personal jurisdiction over MerchSource, and venue is proper in this Court under 28 U.S.C. § 1391 and/or § 1400.

**ANSWER**: MerchSource admits that it conducts business in the State of Delaware, and in this judicial district, and it is a limited liability company formed in Delaware. MerchSource also admits that its registered agent address is listed on the Delaware Department of State: Division of Corporations website as 251 Little Falls Drive, Wilmington, DE 19808. MerchSource further admits that this Court has personal jurisdiction over MerchSource, and venue is proper in this Court under 28 U.S.C. § 1391 and/or § 1400 for purposes of this action. MerchSource denies the remaining allegations of this paragraph.

## FACTUAL BACKGROUND

### Buffalo Games and the '672 Patent

5.      Buffalo Games is an industry leading consumer enrichment platform. Buffalo Games' innovative product portfolio includes puzzles, games, and developmental products.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

6.     Buffalo Games owns several issued United States and foreign patents related to standard drawing, semi-transparent, and multi-color LCD writing tablets and eWriters, including United States Patent No. 9,927,672 (the "'672 Patent"). The '672 Patent is entitled "Multicolored pressure sensitive liquid crystal device," was filed on December 16, 2015, issued on March 27, 2018, and is included herewith as Exhibit A.

**ANSWER**: MerchSource admits that the document attached as Exhibit A purports to be a copy of United States Patent No. 9,927,672 (the "'672 Patent"), and that the '672 Patent lists a title of "Multicolored pressure sensitive liquid crystal device," a filing date of December 16, 2015, and an issue date of March 27, 2018. MerchSource is without sufficient information or belief to admit or deny the remaining allegations of this paragraph and therefore denies them.

7.     Buffalo Games sells tablet and eWriter products under its Boogie Board® brand.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

8.     The '672 Patent and Boogie Board® brand were previously owned by Kent Displays, Inc. ("KDI"), an industry and global leader in the design, manufacture, and sale of LCD writing tablet and eWriter display technologies and products.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

9.     In 2025, Buffalo Games completed an asset purchase of all of KDI's Boogie Board® assets, including its display production capacity, its branded consumer products, and

its wide ranging and important patent portfolio. Specifically, Buffalo Games acquired all rights in and to the '672 Patent from KDI as part of this asset purchase.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

10. Buffalo Games recorded KDI's assignment of the '672 Patent to Buffalo Games with the United States Patent and Trademark Office on March 18, 2025, including assignment of all rights to sue for past infringement.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

11. Buffalo Games has standing to sue for past and present infringement of the '672 Patent.

**ANSWER**: MerchSource is without sufficient information or belief to admit or deny the allegations of this paragraph and therefore denies them.

**MerchSource Products**

12. MerchSource offers LCD writing tablets and eWriters under at least the product names "FAO Schwarz Magic Art LCD Drawing Tablet" (the "Magic Art" product) and "Discovery Bright Doodles LCD Art Tablet" (the "Bright Doodles" product) (collectively, the "MerchSource products").

**ANSWER**: MerchSource admits that it sells the "FAO Schwarz Magic Art LCD Drawing Tablet" (the "Magic Art" product) and "Discovery Bright Doodles LCD Art Tablet" (the "Bright Doodles" product) (collectively, the "MerchSource products"). MerchSource denies the remaining allegations of this paragraph.

4

13.    The Magic Art product is widely available for purchase online. For example, the product is available on FAO Schwarz's website, https://faoschwarz.com/products/toy-lcd-doodle-board?srsltid=AfmBOooXhmelEqNf51ekBLcArHK-Csa2MduSigZKAEutNZzgabd-zEmI (last visited January 14, 2026), and Target's website, https://www.target.com/p/fao-schwarz-magic-art-lcd-drawing-tablet/-/A-89957387 (last visited on January 14, 2026).



**ANSWER**: MerchSource admits that the Magic Art product is widely available for purchase online and has been available for purchase at the links identified in this paragraph.

14.    The Bright Doodles product is additionally widely available for purchase online. For example, the product is available on Kohl's website, https://www.kohls.com/product/prd-7444743/discovery-bright-doodles-lcd-art-tablet.jsp (last visited January 14, 2026), and Macy's website, https://www.macys.com/shop/product/discovery-kids-bright-doodles-lcd-art-tablet?ID=18951653 (last visited January 14, 2026).



**ANSWER**: MerchSource admits that the Bright Doodles product is widely available for purchase online and has been available for purchase at the links identified in this paragraph.

**Correspondence with MerchSource Regarding the MerchSource Products**

15.    On March 28, 2025, after Buffalo Games completed the asset purchase of all of KDI's assets, counsel for Buffalo Games sent a letter to MerchSource. Buffalo Games informed MerchSource of its purchase of all of KDI's assets. Buffalo Games specifically notified MerchSource that the Magic Art product infringed at least the '672 Patent. Buffalo Games also requested that MerchSource cease offering and selling the Magic Art product.

**ANSWER**: MerchSource admits that Buffalo Games communicated to MerchSource that Buffalo Games purchased KDI's assets, that Buffalo Games alleged that the Magic Art product infringed the '672 Patent, and that Buffalo Games requested that MerchSource cease offering

and selling the Magic Art product. MerchSource is without sufficient information or belief to admit or deny the remaining allegations of this paragraph and therefore denies them.

16. On April 11, 2025, MerchSource responded by a letter from counsel to Buffalo Games' letter dated March 28, 2025. MerchSource stated that it was looking into the allegations and that it would respond in the coming weeks with a substantive reply.

**ANSWER**: Admitted.

17. On May 2, 2025, having received no follow up from MerchSource following its letter dated April 11, 2025, counsel for Buffalo Games sent an email to counsel for MerchSource asking for confirmation that MerchSource would cease offering and selling the Magic Art product.

**ANSWER**: MerchSource admits that Buffalo Games sent an email to counsel for MerchSource on May 2, 2025, asking for confirmation that MerchSource would cease offering and selling the Magic Art product. MerchSource denies the remaining allegations in this paragraph.

18. On May 28, 2025, still having received no reply from MerchSource, counsel for Buffalo Games again sent an email to counsel for MerchSource asking for confirmation that MerchSource would cease sales, requesting a reply by June 3, 2025.

**ANSWER**: MerchSource admits that Buffalo Games sent an email to counsel for MerchSource on May 28, 2025, requesting a reply by June 3, 2025. MerchSource denies the remaining allegations in this paragraph.

19. On May 28, 2025, counsel for MerchSource responded stating that it was in the process of reviewing the technology and requested a claim chart to assist. Counsel for

Buffalo Games provided a preliminary claim chart to MerchSource's counsel via email this same day.

**ANSWER**: Admitted.

20.    On May 29, 2025, counsel for MerchSource confirmed receipt of the claim chart and suggested they would respond in the coming days.

**ANSWER**: Admitted.

21.    On June 10, 2025, counsel for MerchSource provided a substantive response in the form of a letter dated June 9, 2025, to Buffalo Games contesting the infringement.

**ANSWER**: MerchSource admits that on June 10, 2025, counsel for MerchSource provided a substantive response in the form of a letter dated June 9, 2025, to Buffalo Games contesting alleged infringement. MerchSource denies the remaining allegations in this paragraph.

22.    On June 26, 2025, counsel for Buffalo Games responded to the June 9, 2025 letter with more substantive claim charts outlining the Magic Art infringement and instituted allegations against the Bright Doodles product on the same grounds.

**ANSWER**: Admitted.

23.    On July 2, 2025, counsel for Buffalo Games requested a response to its June 26, 2025, correspondence by July 8, 2025.

**ANSWER**: Admitted.

24.    On July 2, 2025, counsel for MerchSource responded to counsel for Buffalo Games suggesting they would respond the following week.

**ANSWER**: Admitted.

25.    On July 8, 2025, counsel for MerchSource followed up with counsel for Buffalo Games suggesting that they would respond soon.

**ANSWER**: Admitted.

26.    On July 14, 2025, counsel for MerchSource substantively replied via letter to Buffalo Games' allegations maintaining its position that the MerchSource products do not infringe.

**ANSWER**: Admitted.

27.    On July 17, 2025, counsel for Buffalo Games replied via letter to counsel for MerchSource with further evidence of infringement and a reiteration of Buffalo Games' request to cease sales and exit the market.

**ANSWER**: MerchSource admits that on July 17, 2025, counsel for Buffalo Games replied via letter to counsel for MerchSource reiterating Buffalo Games' request to cease sales and exit the market. MerchSource denies the remaining allegations in this paragraph.

28.    On July 17, 2025, counsel for MerchSource confirmed receipt of the July 17, 2025, letter.

**ANSWER**: Admitted.

29.    On July 25, 2025, counsel for MerchSource informed counsel for Buffalo Games of its intent to engage a third-party to evaluate its non-infringement position.

**ANSWER**: MerchSource admits that on July 25, 2025, counsel for MerchSource informed counsel for Buffalo Games of its intent to engage a third-party to determine if the information MerchSource received from its manufacturer was accurate or correct. MerchSource denies the remaining allegations in this paragraph.

30.    On August 5, 2025, counsel for MerchSource informed counsel for Buffalo Games that it was still in the process of third-party review.

**ANSWER**: Admitted.

31.     On September 10, 2025, counsel for Buffalo Games requested an update from counsel for MerchSource.

**ANSWER**: Admitted.

32.     On September 11, 2025, counsel for MerchSource informed counsel for Buffalo Games that the review process was ongoing.

**ANSWER**: Admitted.

33.     On October 22, 2025, counsel for Buffalo Games again requested an update from Counsel for MerchSource.

**ANSWER**: Admitted.

34.     On October 23, 2025, counsel for MerchSource again informed counsel for Buffalo Games that the review process was ongoing. Counsel for MerchSource additionally requested information regarding market exit agreements from other market participants.

**ANSWER**: MerchSource admits that on October 23, 2025, counsel for MerchSource again informed counsel for Buffalo Games that the review process was ongoing. MerchSource denies the remaining allegations in this paragraph.

35.     On October 24, 2025, counsel for Buffalo Games provided the requested information regarding market exit agreements from other market participants to counsel for MerchSource as well as more information regarding the infringement.

**ANSWER**: MerchSource admits that on October 24, 2025, counsel for Buffalo Games provided a list of names of entities that Buffalo Games claimed had entered into market exit agreements with Buffalo Games. MerchSource denies the remaining allegations in this paragraph.

36.     On October 24, 2025, counsel for MerchSource confirmed receipt of the October 24, 2025, communication to counsel for Buffalo Games.

**ANSWER**: Admitted.

37.     On November 19, 2025, counsel for Buffalo Games requested an update from counsel for MerchSource.

**ANSWER**: Admitted.

38.     On November 24, 2025, counsel for MerchSource responded to counsel for Buffalo Games stating that its review would be completed shortly and it reiterated that it disputed the infringement allegations. It additionally asked for further information regarding the infringement from Buffalo Games.

**ANSWER**: MerchSource admits that on November 24, 2025, counsel for MerchSource responded to counsel for Buffalo Games stating that its review would be completed shortly and it reiterated that it disputed the infringement allegations. MerchSource denies the remaining allegations in this paragraph.

39.     On November 25, 2025, counsel for Buffalo Games substantively responded to counsel for MerchSource's November 24, 2025, email with further information regarding its infringement analysis.

**ANSWER**: MerchSource admits that on November 25, 2025, counsel for Buffalo Games responded to counsel for MerchSource's November 24, 2025 email discussing Buffalo Games' view of a prior APEX proceeding. MerchSource denies the remaining allegations in this paragraph.

11

40.    On December 9, 2025, counsel for MerchSource substantively responded to counsel for Buffalo Games' correspondence from November 25, 2025, summarizing the still ongoing status of its third-party analysis.

**ANSWER**: Admitted.

41.    On January 7, 2026, counsel for Buffalo Games followed up with counsel for MerchSource requesting an update on its analysis and reiterating its active market exit demand.

**ANSWER**: Admitted.

42.    Neither MerchSource nor its counsel have provided any response since the email dated January 7, 2026.

**ANSWER**: Admitted.

## COUNT I – INFRINGEMENT OF THE '672 PATENT

43.    Buffalo Games incorporates Paragraphs 1-42 of this Complaint as though fully set forth herein.

**ANSWER**: MerchSource incorporates by references its responses to paragraphs 1 through 42 as though fully set forth herein.

44.    MerchSource directly infringed and continues to infringe the '672 Patent (the "Asserted Patent") by making, using, offering for sale, selling, and/or importing the MerchSource products.

**ANSWER**: Denied.

45.    By way of example, MerchSource infringes at least Claim 1 of the '672 Patent.

**ANSWER**: Denied.

12

46.     The preamble of claim 1 requires: "A multicolored pressure sensitive liquid crystal device comprising."

**ANSWER**: MerchSource admits that the preamble of claim 1 states "A multicolored pressure sensitive liquid crystal device comprising:". MerchSource denies the remaining allegations of this paragraph.

47.     The MerchSource products are multicolored devices with a pressure sensitive liquid crystal display (LCD) screen, where a user can draw or write on the device by pressing the tip of a stylus against the surface of the display screen.



**DESCRIPTION**

Unleash your child's artistic potential with the FAO Schwarz® Magic Art LCD Drawing Tablet. This innovative drawing tablet features a widescreen LCD surface that offers a mess-free way for kids to doodle, draw, and design. The angled drawing surface ensures a comfortable and ergonomic experience, making it easy for children to express their creativity. Simple controls allow them to erase or lock their artwork with ease, providing a user-friendly experience for young artists. The stylus is permanently tethered to the tablet and can be stored inside, ensuring it's always ready for use and never lost. Ideal for creative fun at home or on the go, the Sketch Magic LCD Drawing Tablet is the perfect tool for encouraging imagination and artistic skills in kids of all ages.

13



**Product Details**

The discovery™ bright doodles LCD art tablet redefines creative play for children by providing a modern, mess-free canvas to bring their imaginations to life. This tablet's large widescreen is ideal for crafting detailed drawings and colorful doodles, ensuring every creation is vibrant and engaging. Designed with both functionality and convenience in mind, it features a permanently tethered stylus that neatly stores within the tablet, eliminating the worry of losing it. The skid-free pads and an ergonomically angled design offer a comfortable and stable drawing experience, whether on a tabletop or a lap. Children can easily manage their artistic creations with simple controls to erase or lock the screen, empowering them to decide when to start anew or preserve their artwork to share with others. Lightweight and easily portable, the discovery™ bright doodles lcd art tablet is an excellent travel companion that enables young artists to explore their creativity and learn new skills. Top of form.

**ANSWER**: Admitted.

48.     The first element of claim 1 requires: "a first transparent substrate that is flexible on which a pressure is applied and a second substrate spaced apart from said first substrate."

**ANSWER**: MerchSource admits that claim 1 states in part "a first transparent substrate that is flexible on which a pressure is applied and a second substrate spaced apart from said first substrate." MerchSource denies the remaining allegations of this paragraph.

14

49.     MerchSource's products each have a first substrate that is transparent and flexible on the surface of its display screen. A user can apply pressure to this outer surface with a stylus. Additionally, MerchSource's products each have a second substrate spaced apart on the inside from the first substrate.

 

**ANSWER**: Admitted.

50.     The next element of claim 1 requires: "a first electrically conductive layer and a second electrically conductive layer that are disposed between said first substrate and said second substrate and are separated from and adjacent to each other, said first electrically conductive layer being transparent."

**ANSWER**: MerchSource admits that claim 1 states in part "a first electrically conductive layer and a second electrically conductive layer that are disposed between said first substrate and said second substrate and are separated from and adjacent to each other, said first electrically conductive layer being transparent." MerchSource denies the remaining allegations of this paragraph.

51.     MerchSource's products each have a first electrically conducive layer and a second electrically conductive layer between the first and second substrates that are separated

15

from and adjacent to each other, with the first electrically conductive layer nearest the surface of the display screen being transparent.




**ANSWER**: Denied.

52.    The next element of claim 1 requires: "a pressure sensitive liquid crystal layer comprising a dispersion of cholesteric liquid crystal and polymer, wherein one surface of said liquid crystal layer contacts said first electrically conductive layer and another surface of said liquid crystal layer contacts said second electrically conductive layer."

**ANSWER**: Admitted.

53.    MerchSource's products each have a pressure sensitive liquid crystal layer with a dispersion of cholesteric liquid crystal and polymer. One surface of the liquid crystal layer contacts the first electrically conductive layer and another surface contacts the second electrically conductive layer. The pressure-sensitive nature of the liquid crystal layer is

16

demonstrated by the lines which  appear when a user presses on the outer surface of the display with the tip of a stylus.



**ANSWER**: Denied.

54.     The next element of claim 1 requires: "wherein said liquid crystal layer includes at least a first color region and a second color region comprising said dispersion of cholesteric liquid crystal and polymer, said first color region being adapted to reflect light of a first color and said second color region being adapted to reflect light of a second color."

**ANSWER**: MerchSource admits that claim 1 states in part "wherein said liquid crystal layer includes at least a first color region and a second color region comprising said dispersion of cholesteric liquid crystal and polymer, said first color region being adapted to reflect light of a first color and said second color region being adapted to reflect light of a second color." MerchSource denies the remaining allegations of this paragraph.

55.     MerchSource's products each have multiple color regions comprising dispersions of cholesteric liquid crystal and polymer. These regions each reflect light of different colors.

 

**ANSWER**: Denied.

56.    The final element of claim 1 requires: "wherein the pressure applied to said first substrate results in a change in reflectance of said liquid crystal that causes said liquid crystal layer to display said first color as said pressure is applied over said first color region and to display said second color as said pressure is applied over said second color region to form a multicolor image, wherein voltage is not applied to form the multicolor image."

**ANSWER**: MerchSource admits that claim 1 states in part "wherein the pressure applied to said first substrate results in a change in reflectance of said liquid crystal that causes said liquid crystal layer to display said first color as said pressure is applied over said first color region and to display said second color as said pressure is applied over said second color region to form a multicolor image, wherein voltage is not applied to form the multicolor image." MerchSource denies the remaining allegations of this paragraph.

57.    The pressure a user applies to the first substrate on the outer surface results in a change in reflectance of the liquid crystal that causes the liquid crystal to change color across the different color regions, forming a multicolor image.



**ANSWER**: Denied.

58.     MerchSource also infringes independent claim 24 for the same reasons as just described. Its infringement of claim 24 exemplifies its willfulness, and the intentional nature of its infringement. MerchSource has used factually and legally frivolous justifications to ignore Buffalo Games' rights. In communications, MerchSource suggested (incorrectly) that its products lacked the "contact" required in claim 1, and this sufficed to delay or reject Buffalo Games market exit request. Buffalo Games responded by pointing to claim 24, which does not require any "contact" in this regard. Yet MerchSource continued to delay or reject the market exit request. Its "no contact" statement is false, since its products have the "contact" required in claim 1. MerchSource's attempt to stonewall Buffalo Games and ignore its patent rights is therefore factually baseless as to claim 1, and not applicable in any way to claim 24.

**ANSWER**: Denied.

59.     As a direct and proximate consequence of the infringement, Buffalo Games has been, is being, and will continue to be injured in its business and property rights unless such acts and practices are enjoined by the Court, and has suffered, is suffering, and will

19

continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

**ANSWER**: Denied.

60.    MerchSource's infringement has been willful, as evidenced by its lengthy delaying tactics after receiving specific notice of infringement, entitling Buffalo Games to treble damages.

**ANSWER**: Denied.

## PRAYER FOR RELIEF

MerchSource denies that Buffalo Games is entitled to any relief whatsoever.

## ADDITIONAL DEFENSES

MerchSource asserts the following defenses, undertaking the burden of proof only as to those defenses required by law regardless of how such defenses are denominated herein. MerchSource reserves the right to assert additional defenses that become known through fact discovery or otherwise.

## FIRST DEFENSE
### (Non-Infringement)

MerchSource does not and has not infringed any properly construed, valid, and enforceable claim of the '672 Patent, either directly, indirectly, contributorily, by inducement, literally, under the doctrine of equivalents, jointly, willfully, or in any other manner.

20

## SECOND DEFENSE
### (Invalidity)

Each relevant claim of the '672 Patent is invalid for failure to meet the requirements of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116, or any other judicially created bases for invalidation.

## THIRD DEFENSE
### (Prosecution History Estoppel/Disclaimer)

Plaintiff's claims are barred in whole or in part by the doctrines of prosecution history estoppel and/or prosecution history disclaimer, including but not limited to arguments, amendments, statements, representations, and admissions made during prosecution of the applications resulting in the '672 Patent and/or applications related thereto. Plaintiff is estopped from using the doctrine of equivalents to claim infringement of the claims as alleged in the Complaint and/or Plaintiff is barred from an interpretation of any claim term that includes scope that was disavowed or disclaimed during prosecution.

## FOURTH DEFENSE
### (Ensnarement)

Plaintiff cannot assert the claims of the '672 Patent under the doctrine of equivalents because the asserted claim scope would encompass or ensnare the prior art.

## FIFTH DEFENSE
### (Equitable Doctrines)

Plaintiff's claims against MerchSource regarding the '672 Patent are barred by the equitable doctrines of waiver, estoppel, acquiescence, and/or unclean hands.

21

**SIXTH DEFENSE**
**(35 U.S.C. § 287 – Limitation on Damages)**

To the extent Plaintiff and any alleged predecessors in interest to the '672 Patent failed to properly mark, or require any licensees to properly mark, any of their relevant systems or products as required by 35 U.S.C. § 287 or otherwise give proper notice that MerchSource actions allegedly infringed the '672 Patent, MerchSource is not liable to Plaintiff for the acts alleged to have been performed before MerchSource received actual notice thereof. Moreover, Plaintiff has not pled constructive notice by marking pursuant to 35 U.S.C. § 287. Accordingly, upon information and belief, Plaintiff's claims for recovery of alleged damages are barred and/or limited at least by 35 U.S.C. § 287.

**SEVENTH DEFENSE**
**(35 U.S.C. § 288 – No Costs)**

Plaintiff's claims for costs are barred and/or limited under 35 U.S.C. § 288 for failure to disclaim any invalid claim(s) before commencing this action.

**EIGHTH DEFENSE**
**(Adequate Remedy at Law)**

Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate or irreparable and Plaintiff has an adequate remedy at law.

MerchSource reserves the right to assert additional defenses based on information learned or obtained during discovery.

**MERCHSOURCE'S REQUEST FOR RELIEF**

WHEREFORE, MerchSource respectfully requests that the Court enter:

22

A. Judgment that Plaintiff is not entitled to any relief whatsoever, whether in law, equity, or otherwise in this action;

B. Judgement against Plaintiff in all respects;

C. Judgment declaring any asserted claims of the '672 Patent invalid;

E. Judgment declaring that MerchSource has not infringed (directly, literally and/or under the doctrine of equivalents, indirectly, and/or willfully) any asserted claims of the '672 Patent;

F. Judgment declaring that Plaintiff be enjoined from asserting that MerchSource, and its parent, officers, directors, agents, employees, representatives, and/or stockholders, have infringed (directly, literally and/or under the doctrine of equivalents, indirectly, and/or willfully) any claim of the '672 Patent;

G. A determination that Plaintiff's conduct in this case is exceptional under 35 U.S.C. § 285 and that MerchSource is entitled to an award of its attorneys' fees and costs incurred in connection with this action, and

H. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

MerchSource demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL

Mark C. Johnson
RENNER OTTO
1621 Euclid Avenue, Floor 19
Cleveland, OH 44115
(216) 736-3170


March 16, 2026

*/s/ Michael Flynn*

Michael Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Defendant*

24

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 16, 2026, upon the following in the manner indicated:

Brandon Rickwood                                             *VIA ELECTRONIC MAIL*
DUNLAP BENNETT & LUDWIG
1509 Gilpin Avenue, Suite 2
Wilmington, DE 19806
*Attorneys for Plaintiff*

Robert P. Greenspoon                                         *VIA ELECTRONIC MAIL*
Mark A. Magas
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
*Attorneys for Plaintiff*


                                        */s/ Michael Flynn*

                                        _____
                                        Michael Flynn (#5333)